# APPLICABILITY OF TAX LEVIES UNDER 26 U.S.C. § 6334 TO THRIFT SAVINGS PLAN ACCOUNTS

*Thrift Savings Plan accounts are subject to federal tax levies under sections 6331 and 6334 of the Internal Revenue Code.*

May 3, 2010

## MEMORANDUM OPINION FOR THE CHIEF COUNSEL
## INTERNAL REVENUE SERVICE

Your office has asked whether Thrift Savings Plan ("TSP") accounts, which permit tax-deferred retirement savings for certain federal employees, are subject to federal tax levies under sections 6331 and 6334 of the Internal Revenue Code, notwithstanding a statute that, standing alone, would protect such accounts from "levy," except as expressly provided in that statute.[1] We believe that TSP accounts are subject to federal tax levies under the applicable statutes.

### I.

Your question deals with the interaction between the federal tax levy provisions of the Internal Revenue Code, *see* 26 U.S.C. §§ 6321, 6331, 6334 (2006), and a provision of the Federal Employees' Retirement System Act of 1986 ("FERSA"), 5 U.S.C.A. § 8437(e)(2) (West 2007).

The Internal Revenue Code has long given broad authority to the Treasury Secretary to collect unpaid federal taxes (and associated interest, penalties, and costs) by levy. *See* Internal Revenue Code of 1954, §§ 6331(a), 6334(c), 68A Stat. 1, 783, 785. Under current Code provisions, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand," the amount of the liability, including interest and penalties, "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. If a taxpayer "liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand," the Treasury Secretary may "collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter [which includes section 6321] for the payment of such tax." *Id.* § 6331(a). The code defines such levies to "include[] the power of distraint and seizure by any means" and states that "[i]n any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)." *Id.* § 6331(b).

Section 6334(a) does exempt specified categories of assets from levies. Since 1966, such exempt assets have included "[a]nnuity or pension payments under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of

---

[1] In addition to the views of your office and the Federal Retirement Thrift Investment Board, we have considered views submitted by the Tax Division of the Department of Justice.

Honor roll (38 U.S.C. 1562), and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code." 26 U.S.C. § 6334(a)(6) (codifying the Federal Tax Lien Act of 1966, Pub. L. No. 89-719, § 104(c)(2), 80 Stat. 1125, 1137).[2] Section 6334(c) directs that "[n]otwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." *See* 26 U.S.C. § 6334(c). Section 6334 makes no express exemption for TSP accounts.

Congress enacted FERSA in 1986 to reform the retirement savings system for federal employees. *See* FERSA § 100A, 5 U.S.C. § 8401 note (2006). Among other things, FERSA established the Thrift Savings Plan, which enables federal employees to hold individual retirement savings accounts in the Thrift Savings Fund, an investment fund managed by the Federal Retirement Thrift Investment Board ("FRTIB"). *See* 5 U.S.C.A. §§ 8432, 8437 (West 2007 & West Supp. 2009); 5 U.S.C. §§ 8472, 8479(b) (2006). These accounts, commonly known as "Thrift Savings Plan" or "TSP" accounts, *see* 5 C.F.R. § 1690.1 (2009), offer federal employees a tax-deferred retirement savings opportunity similar to that offered to private-sector employees by so-called "401(k)" plans established under section 401(k) of the Internal Revenue Code, 26 U.S.C.A. § 401 (West Supp. 2009). *See* 5 U.S.C. § 8440 (2006); *see also*, *e.g.*, *Hewitt v. Thrift Sav. Plan*, 664 F. Supp. 2d 529, 530 (D.S.C. 2009) (describing the Thrift Savings Plan as "a retirement plan for certain federal government employees that was designed to allow government employees savings-related benefits very similar to those enjoyed by private sector employees whose employers offer them 401(k) retirement plans"); *Cavanaugh v. Saul*, 233 F.R.D. 21, 22 (D.D.C. 2005) (similar); *In re Hasse*, 246 B.R. 247, 252 (Bankr. E.D. Va. 2000) (similar).

FERSA includes a provision that broadly protects assets in TSP accounts from "levy," subject to specified exceptions. It states:

> Except as provided in paragraph (3), sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process. For the purposes of this paragraph, a loan made from such Fund to an employee or Member shall not be considered to be an assignment or alienation.

5 U.S.C.A. § 8437(e)(2). The cross-referenced paragraph (3) permits legal process to obtain "[m]oneys due or payable from the Thrift Savings Fund" or the "balance" in a TSP account for enforcement of certain child support or alimony obligations under the Social Security Act, 42 U.S.C.A. § 659 (West Supp. 2009); enforcement of certain victim restitution orders under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A (2006); forfeiture under a FERSA provision, 5 U.S.C.A. § 8432(g)(5), of government contributions to a TSP account based on the account-holder's commission of one or more specified national security offenses; and payments required by another FERSA provision, 5 U.S.C. § 8467 (2006), to satisfy certain divorce, annulment, or separation decrees and certain judgments for physical, sexual, or

---

[2] Under section 6331(h) of the Code, certain payments otherwise covered by exemptions in section 6334(a), including "any annuity or pension payment under the Railroad Retirement Act or benefit under the Railroad Unemployment Insurance Act," may be subject to a tax levy, generally limited to fifteen percent of the payment, "[n]otwithstanding section 6334." *See* 26 U.S.C. § 6331(h).

emotional abuse of a child. *See* 5 U.S.C.A. § 8437(e)(3). Paragraph (3) does not cross-reference section 6334 and thus does not expressly indicate that federal tax levies under that provision may be imposed on TSP accounts.

## II.

### A.

To resolve the question here, we must reconcile these two statutes, each of which appears exclusive on its face. While FERSA provides that funds in TSP accounts shall not be subject to levy except as provided in 5 U.S.C.A. § 8437(e)(3), the Internal Revenue Code directs that "[n]otwithstanding any other" federal law, no property is exempt from federal tax levies except as provided in section 6334(a) of the Code. And although both statutes include express exceptions, neither includes a cross-reference to the other specifying how the two statutes should be reconciled.[3]

Despite the apparent conflict between the TSP provision and the federal tax levy statute, our "duty" is "to regard each as effective" if the two statutes are "capable of co-existence." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). "[I]t is '[a] long-standing maxim of statutory construction that statutes are enacted in accord with the legislative policy embodied in prior statutes, and that therefore statutes dealing with the same subject should be construed together.'" Memorandum for General Counsel, Department of Commerce, from Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Relationship Between Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and Statutory Requirement for Confidentiality of Census Information* at 5 (May 18, 1999) (quoting Memorandum for Glen E. Pommerening, Assistant Attorney General for Administration, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, *Re: Establishing a Maximum Entry Age Limit for Law Enforcement Officer Positions in the Department of Justice* at 3 (Apr. 3, 1975)), *available at* http://www.justice.gov/olc/opinionspage.htm ("*IIRIRA Opinion*"). In our view, the texts of the two statutes are properly reconciled by giving primacy to the federal tax levy provision in section 6334.

---

[3] We do not consider here the validity of federal tax levies on any state-law community property interests that spouses of account-holders may have in TSP accounts. In a 1981 opinion, this Office addressed whether a federal tax levy under 26 U.S.C. § 6331(a) could be asserted against a tax delinquent's community property interest in his wife's federal pension, despite a provision directing that the pension benefits in question were "not assignable, either in law or equity, except under [certain provisions], or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws," 5 U.S.C. § 8346(a) (2006). *Validity of Federal Tax Lien on Civil Service Retirement Refund*, 5 Op. O.L.C. 37, 37 (1981). We concluded that "Nevada's community property law, in the absence of explicit legislation by Congress, has not created for [the delinquent taxpayer] 'property [or] rights to property' in his wife's retirement deductions that are assailable by IRS." *Id.* at 40 (quoting 26 U.S.C. § 6331(a)). Your office has asked us here to address the validity of "federal tax levies served on [FRTIB] to attach taxpayer's rights in their individual TSP accounts in order to satisfy outstanding tax liabilities." Letter for David J. Barron, Acting Assistant Attorney General, Office of Legal Counsel, from Clarissa C. Potter, Acting Chief Counsel, Internal Revenue Service at 1 (July 1, 2009). Because it appears undisputed that taxpayers' rights in their own TSP accounts constitute "property [or] rights to property" of the individual taxpayer, we need not consider here whether the reasoning of our 1981 opinion should extend to any community property interests in TSP accounts.

Although the TSP provision may appear absolute if read in isolation, section 6334(c)'s "notwithstanding" clause indicates by its terms that all "other law[s] of the United States," a category that necessarily includes FERSA, are ineffective to bar a federal tax levy, except as provided by the express exceptions in section 6334(a). As a general rule "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993); *see also*, *e.g.*, *IIRIRA Opinion* at 7 (observing that a prefatory "notwithstanding" clause "does reflect a congressional intention to displace inconsistent law"). Indeed, some courts have observed that "'a clearer statement'" of congressional intent to supersede all other laws "'is difficult to imagine,'" *see Cisneros*, 508 U.S. at 18 (quoting *Liberty Maritime Corp. v. United States*, 928 F.2d 413, 416 (1991) (internal quotation marks omitted) (collecting other similar cases), and the Supreme Court has described the "notwithstanding" clause in section 6334 as "direct[ing]" that "[t]he enumeration [of exceptions] contained in § 6334(a) . . . is exclusive." *Drye v. United States*, 528 U.S. 49, 56 (1999); *see also In re Beam (Beam v. IRS)*, 192 F.3d 941, 944 (9th Cir. 1999) (describing section 6334 as "unambiguous" in indicating "that Congress clearly intended to exclude from IRS levy only those 13 categories of property specifically-exempted in section 6334(a)"). In contrast, while the TSP provision appears exclusive by its own terms because it establishes a general bar on levies that applies "except as" provided in FERSA, this provision does not include language comparable to the "notwithstanding" clause in section 6334(c) that expressly overrides other potentially applicable statutes. The text of section 6334 thus appears to reflect a stronger congressional intent to override conflicting statutes than does the text of the TSP provision. *Cf.*, *e.g.*, *Beam*, 192 F.3d at 944 (holding that section 6334 overrides a bankruptcy statute directing that the bankruptcy trustee "shall return" certain payments to the debtor in certain circumstances); *Crowley Caribbean Transp., Inc. v. United States*, 865 F.2d 1281, 1282-83 (D.C. Cir. 1989) (deeming it "implausible" that a statute applicable "notwithstanding" any other statute did not override a separate statute applicable "whenever" the United States took certain actions). As one court has put it, the "plain language [of section 6334(c)] bars interpreting 5 U.S.C. § 8437(e)(2) as proscribing a § 6331 levy on a TSP account." *In re Jones (Jones v. IRS)*, 206 B.R. 614, 617 (Bankr. D.D.C. 1997); *see also United States v. Laws*, 352 F. Supp. 2d 707, 712 & n.7 (E.D. Va. 2004) (holding that criminal restitution order could be enforced against TSP account under statute generally permitting such enforcement to the same extent as federal tax levies).[4]

It is true that FERSA was enacted after section 6334(c), which might be thought to make the preemptive effect of section 6334(c)'s "notwithstanding" clause "less certain," since "[t]he drafters of [section 6334(c)] can hardly be said to have had [FERSA] specifically within their

---

[4] As we have recently observed, "'notwithstanding' phrases are best read simply to qualify the substantive requirement that follows." Memorandum for the General Counsel, Small Business Administration, from Jeannie S. Rhee, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Permissibility of Small Business Administration Regulations Implementing the Historically Underutilized Business Zone, 8(a) Business Development, and Service-Disabled Veteran-Owned Small Business Concern Programs* at 9 (Aug. 21, 2009), *available at* http://www.justice.gov/olc/opinionspage.htm. They therefore do not "support a broad construction of the substantive provision that would give rise to . . . inconsistencies" with other statutes. *IIRIRA Opinion* at 7. Here, however, the substantive clause of section 6334(c) broadly states that "no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)," 26 U.S.C. § 6334(c), and there appears to be no dispute that this substantive provision is inconsistent with the TSP provision to the extent the former statute authorizes levies while the latter restricts them.

contemplation." *Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1403 (D.C. Cir. 1988) (quoting *N.J. Air Nat'l Guard v. FLRA*, 677 F.2d 276, 283 (3d Cir. 1982)); *cf. United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (en banc) (observing that courts have "determined the reach of each such 'notwithstanding' clause by taking into account the whole of the statutory context in which it appears"). Yet in cases involving later-enacted statutes lacking their own applicable "notwithstanding" clauses, courts have deemed "notwithstanding" clauses "powerful evidence that Congress did not intend" other statutes, "whenever enacted," to qualify the terms of the earlier-enacted statute. *Ill. Nat'l Guard*, 854 F.2d at 1403 (quoting *N.J. Air Nat'l Guard*, 677 F.2d at 283); *see also*, *e.g.*, *Am. Fed'n of Gov't Employees v. FLRA*, 239 F.3d 66, 70 (1st Cir. 2001) (following *N.J. Air Nat'l Guard*). As some courts have explained, "[t]he [notwithstanding] language does not preclude a subsequent change of heart on the part of Congress, but it does suggest that any qualification of the terms of [the earlier-enacted statute] would be accepted by Congress only after some consideration of the factors requiring or permitting such a change." *Ill. Nat'l Guard*, 854 F.2d at 1403 (quoting *N.J. Air Nat'l Guard*, 677 F.2d at 283). Moreover, the TSP anti-levy provision, as a later-enacted statute that has no "notwithstanding" clause and does not expressly cross-reference section 6334 or even mention any exercise of authority by the Secretary of Treasury, could override section 6334 and thus preclude federal tax levies on TSP accounts only if it effected an implied partial repeal of section 6334's broad directive that "no property or rights to property shall be exempt from levy other than the property specifically made exempt by [26 U.S.C. § 6334(a)]." 26 U.S.C. § 6334(c). But "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hawaii v. Office of Hawaiian Affairs*, 129 S. Ct. 1436, 1445 (2009) (internal quotation marks and brackets omitted)). Here, we believe the text and history of the two statutes support the conclusion that Congress, far from "clear[ly] and manifest[ly]," *id.*, intending to repeal section 6334(c), in fact intended to permit federal tax levies on TSP accounts.[5]

As one indication of section 6334(c)'s breadth, Congress amended that provision in 1984 expressly to include section 207 of the Social Security Act, 42 U.S.C. § 407 (2006), which provides that "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." *Id.* § 407(a). This provision itself had recently been amended to provide that "[n]o other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the

---

[5] A related principle of statutory interpretation holds that "in the absence of a clear intention to the contrary 'a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" *Disclosure of Confidential Business Records Obtained Under the National Traffic and Motor Vehicle Safety Act*, 4B Op. O.L.C. 735, 736 (1980) (quoting *Morton*, 417 U.S. at 550-51). This canon is inapplicable here, however, because neither statute is clearly more specific or more general than the other in relevant respects. On the one hand, federal tax levies under section 6334 are only a subset of the broader category of "levies" covered by the plain terms of the TSP provision, while on the other hand TSP accounts are only a subset of the broader category of "property or rights to property" covered by the plain terms of federal tax levy provisions. *See*, *e.g.*, *Restrictions on Travel by Voice of America Correspondents*, 23 Op. O.L.C. 192, 195 n.2 (1999) (observing that an issue of statutory construction could not be resolved "by turning to the principle that, absent a clear intention to the contrary, a specific statute controls a general one" because one set of applicable statutes was "more specific" on one question but "less specific" on another); *Gulf War Veterans Health Statutes*, 23 Op. O.L.C. 49, 52 (1999) (rejecting application of the canon where "the two provisions are at the same order of specificity").

provisions of this section except to the extent that it does so by express reference to this section." *See* Social Security Amendments of 1983, Pub. L. No. 98-21, § 335(a)(2), 97 Stat. 65, 130 (codified at 42 U.S.C. § 407(b)); Spending Reduction Act of 1984, Pub. L. No. 98-369, Div. B, tit. VI, § 2661(o)(5), 98 Stat. 494, 1159 (codified at 26 U.S.C. § 6334(c)); *see also* H.R. Conf. Rep. No. 98-861, at 1413 (describing subtitle including change to section 6334 as "contain[ing] a number of minor technical amendments to the Social Security Act and the Internal Revenue Code, to correct clerical and other minor errors either resulting from the Social Security Amendments of 1983, or already existing in those acts"). The "express reference" requirement of section 207 shows, if anything, a stronger congressional intent to preclude levies than the relevant prohibitory language of FERSA, which includes no such "express reference" requirement broadening its scope. Accordingly, as the en banc Ninth Circuit recently observed in an analysis of provisions similar to those at issue here, "[i]t would . . . be anomalous to interpret" section 6334(c) "as abandoning the protection of Social Security benefits but not of retirement plans" covered by other provisions that do not even have a comparable "express reference" requirement. *Novak*, 476 F.3d at 1048. "[B]y making clear that the 'notwithstanding' clause 'includes' the one federal anti-alienation provision that demands explicit statutory override, Congress manifested that [section 6334(c)] means what it says"—that absent an express exception in section 6334, no "property or rights to property" are exempt from levy. *See id.*; *see also id.* at 1076-77 (W. Fletcher, J., dissenting) (disagreeing with majority's conclusions regarding the statutes at issue but distinguishing Internal Revenue Code section 6334).

Congress's express exemption of certain retirement benefits from tax levies under section 6334 reinforces the view that Congress did not intend to provide a similar exception for TSP accounts, which are not expressly exempted. The four exempted retirement statutes all include anti-alienation provisions. While one of these statutes (the Railroad Retirement Act) expressly cross-references the Internal Revenue Code and applies "notwithstanding any other law of the United States," *see* 45 U.S.C. § 231m(a) (2006), and another (the Railroad Unemployment Insurance Act) also applies "[n]otwithstanding any other law of the United States," *id.* § 352(e), the other two employ language closely similar to the TSP provision. Specifically, provisions governing the exempted "annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code," 26 U.S.C. § 6334(a)(6), provide, without any express carve-out for the Internal Revenue Code, that "[e]xcept as provided" elsewhere in that chapter, certain annuities are not "assignable or subject to execution, levy, attachment, garnishment, or other legal process." 10 U.S.C. § 1440 (2006) (covering annuities under one subchapter of chapter 73); *id.* § 1450(i) (covering annuities under another subchapter of chapter 73). And provisions governing the exempted "special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll (38 U.S.C. 1562)," 26 U.S.C. § 6334(a)(6), provide that such "[s]pecial pension[s] shall not be subject to any attachment, execution, levy, tax, lien, or detention under any process whatever." *See* 38 U.S.C. § 1562(c) (2006).

Given the breadth of section 6334(c)'s terms— "no property or rights to property shall be exempt from levy" except as "specifically" provided in section 6334(a)—and its express applicability "[n]otwithstanding any other law of the United States," 26 U.S.C. § 6334(c), the express exemptions from federal tax levies in section 6334(a) cannot be understood as simply "clarify[ing]" the scope of the rule in section 6334(c). *Am. Fed'n of Gov't Employees v. FLRA*,

702 F.2d 1183, 1187 (D.C. Cir. 1983) (opinion by Scalia, J.); *see also Drye*, 528 U.S. at 56 (concluding that "[t]he enumeration [of exceptions to section 6334(c)] contained in § 6334(a) . . . is exclusive"). Accordingly, section 6334's express exceptions for these pension and annuity benefits suggest that without the exceptions the benefits *would* be subject to levy under sections 6331 and 6334, despite the applicable anti-alienation provisions in the cross-referenced statutes governing the benefits. By the same token, it is unlikely Congress intended the comparable language of the TSP provision—"[e]xcept as provided in [section 8437(e)(3)], sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process," 5 U.S.C.A. § 8437(e)(2)—to create an exemption from tax levies under the Internal Revenue Code without an express exemption in section 6334. In other words, there would be no apparent need for the express exemption for the retirement benefits listed in section 6334(a)(6) if language such as that in the TSP provision sufficed on its own to establish such an exemption.

The relevant legislative history of the two statutes accords with our construction of them. With respect to section 6334, the legislative history plainly shows that this provision should override other statutes. According to the committee reports on the 1954 Internal Revenue Code, Congress intended section 6334(c) to "make[] it clear that no other provision of Federal law shall exempt property" from federal tax levies. *See* H.R. Rep. No. 83-1337, at A409 (1954) (House Ways and Means Committee report on Internal Revenue Code of 1954); S. Rep. No. 83-1622, at 578 (1954) (Senate Finance Committee report on Internal Revenue Code of 1954). And with respect to FERSA, the legislative history shows that Congress "patterned" the Thrift Savings Plan "after [retirement savings plans] found among large employers in private industry." *See* S. Rep. No. 99-166, at 48 (1985); *see also* H.R. Conf. Rep. No. 99-606, at 134 (1986) (observing that "[t]he tax-deferred features of the plan . . . make the Thrift Savings Plan economically attractive to employees" and that "[t]hese popular tax-deferred savings plans should be as available to Federal employees as they are to private sector employees"); S. Conf. Rep. No. 99-302, at 134 (1986) (same). Similar private-sector plans are generally governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 2008 & West Supp. 2009; West 2009), which includes its own anti-alienation provision directing that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." *See id.* § 1056(d)(1). Courts have construed section 6334 to permit tax levies on plans covered by this provision. *See, e.g.*, *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009); *United States v. Taylor*, 338 F.3d 947, 950 n.3 (8th Cir. 2003); *McIntyre v. United States* (*In re McIntyre*), 222 F.3d 655, 660 (9th Cir. 2000); *United States v. Sawaf*, 74 F.3d 119, 124 (6th Cir. 1996); *Shanbaum v. United States*, 32 F.3d 180, 183 (5th Cir. 1994); *United States v. Rogers*, 558 F. Supp. 2d 774, 786 n.1 (N.D. Ohio 2008); *see also* 26 C.F.R. § 1.401(a)-13(b) (providing that certain qualified ERISA plans must provide that "benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process," but indicating that such plans "shall not preclude . . . [t]he enforcement of a Federal tax levy made pursuant to section 6331"). These courts, to be sure, have relied in part on ERISA's savings clause, which generally provides that "[n]othing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C.A. § 1144(d). But Congress's decision to model TSP accounts on private retirement savings plans is in line with the textual indications that Congress did not intend to prevent tax levies on TSP accounts of public employees who fail to pay taxes and suggests that Congress did not wish to provide greater

protection against federal tax levies to the assets held in the TSP retirement accounts of federal employees than it conferred on the comparable accounts of private-sector employees.

Our interpretation of the relationship between section 6334 and the TSP provision, moreover, continues to give effect to the term "levy" in the latter statute. While federal tax levies under section 6331 may be one common form of "levy," the term has other applications as well. Black's Law Dictionary defines "levy" to mean not only "[t]he imposition of a fine or tax; the fine or tax so imposed" (so-called "tax levies"), but also "[t]he legally sanctioned seizure and sale of property; the money obtained from such a sale" (so-called "levies of execution"). Black's Law Dictionary 991 (9th ed. 2009). In keeping with this definition, the term has been used in other contexts to describe means of recovering a variety of both public and private debts. *See*, *e.g.*, 28 U.S.C. §§ 3002(3), (4), 3102(d), 3203(d) (2006) (authorizing "levies" to collect various debts owed to the United States); U.C.C. § 6-111 (1987 Official Text), *reprinted in* U.C.C. app. V at 1497 (2005) (providing with respect to recovery of certain private debts that "[n]o action under this Article shall be brought *nor levy made* more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed" (emphasis added)); D.C. Code § 28:6-111 (2001) (codifying this provision); Md. Code Ann., Com. Law, § 6-111 (West 2009) (same); U.C.C. § 6-111 cmt. 2 (1987 Official Text), *reprinted in* U.C.C. app. V at 1497 (2005) (indicating that while "'levy' . . . is not a defined term under the Code," the term "should be read broadly [in this provision] as including not only levies of execution proper but also attachment, garnishment, trustee process, receivership, or whatever proceeding, under the state's practice, is used to apply a debtor's property to payment of his debts"); *United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 782-85 (5th Cir. 2006) (discussing levies imposed on certain bank account assets under New York, South Carolina, and Washington state law to execute a federal court civil judgment), *vacated in part on other grounds*, 493 F.3d 469 (5th Cir. 2007) (en banc). Furthermore, a Treasury Department regulation requires certain pension plans to bar "benefits provided under the plan" from being "anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, *levy*, execution or other legal or equitable process," but then exempts federal tax levies under section 6331 from this prohibition. *See* 26 C.F.R. § 1.401(a)-13(b) (emphasis added). As this regulation demonstrates, the term "levy" in the Treasury Department's view encompasses more than federal tax levies. Therefore, a restriction on "levies," as appears in FERSA, need not be viewed as unnecessary or without meaningful effect where federal tax levies are expressly permitted by a different statute that controls. In short, absent some statutory restriction on doing so, both private and governmental parties might seek to impose levies on TSP accounts to collect debts other than federal tax liabilities. Because FERSA's general bar against levies on TSP accounts therefore need not be understood solely as a limitation against federal tax levies, the provision is not rendered superfluous by reconciling the two measures as we think proper.

## B.

Against this reading of the proper means of reconciling the two statutes, we have been offered several reasons to conclude that Congress intended the TSP provision to bar federal tax levies under sections 6331 and 6334.

First, another FERSA anti-alienation provision (applicable to certain annuities) includes the phrase "except as otherwise may be provided by Federal laws," 5 U.S.C. § 8470(a) (2006),

and the Senate version of the TSP anti-alienation provision included a similar clause that was dropped from the final bill by a conference committee. *See* H.R. Conf. Rep. No. 99-606, at 39; S. Conf. Rep. No. 99-302, at 39; H.R. 2672, 99th Cong. § 101(a) (as ordered printed with Senate amendments, Nov. 14, 1985) (proposing new 5 U.S.C. § 8426(d)); S. Rep. No. 99-166, at 52. While the contrast between section 8470 and the TSP anti-alienation provision might suggest that Congress intended to protect TSP accounts from levy under other "Federal laws," and thus presumably under section 6334 as well, the conference committee did not explain its decision to omit this Senate language.[6] *See* H.R. Conf. Rep. No. 99-606, at 133-39; S. Conf. Rep. No. 99-302, at 133-39. Given the "notwithstanding" clause in section 6334, Congress might well have concluded that, whatever the effect of the anti-alienation provision on other federal statutes, a broad express exception for "Federal laws" was unnecessary to permit federal tax levies on TSP accounts. Indeed, several years before Congress enacted FERSA, this Office concluded that a similar "except as" clause in 5 U.S.C. § 8346(a) (2006), an anti-alienation provision for certain federal pensions, "was probably included *pro forma*" and "was not necessary to enable IRS to reach funds payable under the retirement law to employees or former employees delinquent in the payment of their taxes." *Validity of Federal Tax Lien on Civil Service Retirement Refund*, 5 Op. O.L.C. 37, 39 (1981). In any event, we cannot presume that, contrary to the other considerations of text and history discussed above, Congress's omission of an "except as" clause included in another provision and originally included in the Senate bill signals the kind of "clear and manifest" intent, *Office of Hawaiian Affairs*, 129 S. Ct. at 1445 (internal quotation marks omitted), that would be required to repeal section 6334 by implication and thus shield TSP accounts from federal tax levies.

Second, according to the legislative history, Congress enacted ownership and vesting protections for TSP accounts to prevent "political involvement in the thrift plan management" and eliminate any congressional temptation to "use the large pool of thrift money for political purposes." *See* H.R. Conf. Rep. No. 99-606, at 136; S. Conf. Rep. No. 99-302, at 136. An IRS levy to collect unpaid taxes, however, does not implicate these concerns, because such levies are possible only in the case of a tax delinquency.

Third, in 1996, Congress amended FERSA to provide that "[n]otwithstanding any other provision of law," the government's contributions to an employee's TSP account (and any associated earnings) "shall be forfeited" if the employee forfeits certain other federal retirement benefits under provisions authorizing such forfeiture based on the employee's commission of one or more specified national security offenses. *See* Intelligence Authorization Act for Fiscal Year 1996, Pub. L. No. 104-93, § 304, 109 Stat. 961, 965 (1996) (codified at 5 U.S.C.A. § 8432(g)(5)). Congress's placement of the new provision, 5 U.S.C.A. § 8432(g)(5), in

---

[6] As explained in the conference committee reports, the Senate passed the legislation that became FERSA as an amendment to unrelated House legislation. H.R. Conf. Rep. No. 99-606, at 125; S. Conf. Rep. No. 99-302, at 125; *see also* 131 Cong. Rec. 31,087 (1985) (Senate passage of legislation). Although the House bill in the conference included no provisions for the establishment of a new federal retirement system, the conferees "were cognizant of" a pending House retirement reform bill, and they "incorporated many of [this bill's provisions] in the conference agreement." H.R. Conf. Rep. No. 99-606, at 125; S. Conf. Rep. No. 99-302, at 125; *see also* H.R. 3660, 99th Cong. (1985) (pending House bill); H.R. Rep. No. 99-1030, at 174-75 (1986) (review of committee activity describing legislative history of FERSA and H.R. 3660). The House bill included a TSP anti-alienation provision that, among other differences from the Senate provision, omitted the clause "except as may be provided in a Federal law" that appeared in the Senate bill. *See* H.R. 3660 § 101(a) (proposing new 5 U.S.C. § 8434(d)); H.R. 2672 § 101(a) (proposing new 5 U.S.C. § 8426(d)).

provisions governing TSP accounts, rather than in the provisions generally governing forfeiture based on national security offenses, might be argued to support the conclusion that "Congress intended that TSP funds were, and are, to be alienated only pursuant to the express exceptions set forth in FERSA." Letter for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Thomas K. Emswiler, General Counsel, Federal Retirement Thrift Investment Board at 5 (Sept. 17, 2009) ("FRTIB Submission"). Yet because other provisions of the subsection to which Congress added this provision deal with forfeiture of government contributions to TSP accounts, *see* 5 U.S.C.A. § 8432(g), it would seem a natural, or at least convenient, place to locate the new provision. In any event, we do not believe we can draw such a sweeping inference about congressional intent from Congress's decision where to codify this provision, which is described in the legislative history as merely "clos[ing] a loophole." *See* H.R. Rep. No. 104-138, pt. 1, at 29 (1995). In fact, if anything, this amendment reinforces the conclusion that section 6334(c) permits federal tax levies on TSP accounts, because in section 8432(g)(5) Congress authorized forfeiture from TSP accounts using precisely the phrase— "notwithstanding any other" law—that also appears in section 6334(c).[7]

Finally, another FERSA amendment, enacted in 2009, created an express exception to the TSP anti-alienation provision for the "enforcement" of certain victim restitution orders under the MVRA, 18 U.S.C. § 3663A. *See* 5 U.S.C.A. § 8437(e)(3). Because a separate MVRA provision already provided for civil enforcement of such restitution orders "[n]otwithstanding any other Federal law (including section 207 of the Social Security Act)," *see* 18 U.S.C. § 3613(a), (f) (2006), Congress's addition of this express exception could show that Congress did not believe that the "notwithstanding" provision in the MVRA already authorized alienation of TSP account assets and thus that Congress did not intend the closely similar "notwithstanding" language of section 6334(c) to authorize such alienation. The legislative background of this amendment, however, undermines this inference. The Ninth Circuit, among other courts, had held that the MVRA enforcement provision superseded ERISA's anti-alienation provision, thus allowing enforcement against funds in ERISA-governed plans.[8] *See Novak*, 476 F.3d at 1053 (en banc decision); *see also*, *e.g.*, *United States v. Miller*, 588 F. Supp. 2d 789, 796 (E.D. Mich. 2008); *United States v. Lazorwitz*, 411 F. Supp. 2d 634, 636-37 (E.D.N.C. 2005); *United States v. James*, 312 F. Supp. 2d 802, 804-05 (E.D. Va. 2004); *cf. United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006) (adopting the "understanding" that "18 U.S.C. § 3613(a) permits courts to consider ERISA protected assets in determining appropriate fines and restitution" because

---

[7] More broadly, FRTIB suggests that because certain provisions in Title 5 of the U.S. Code governing the Thrift Savings Fund explicitly incorporate or cross-reference specific provisions of the Internal Revenue Code (Title 26) applicable to analogous private retirement savings plans, Congress "designed the TSP to be governed by title 5, not title 26," and did not intend "[p]rovisions in the [Internal Revenue Code] applicable to private sector plans [to be] self-executing with regard to the TSP." FRTIB Submission at 10-11. But express cross-references to such other Internal Revenue Code provisions would not preclude the application of the federal tax levy provisions, which by their terms reach all "property and rights to property," to TSP accounts. 26 U.S.C. §§ 6331(a), 6334(c); *see also*, *e.g.*, *Drye*, 528 U.S. at 56 (observing that the language in section 6331(a) "'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have'" (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985)). We express no view in this opinion about the applicability of any other Internal Revenue Code provisions to TSP accounts or the Thrift Savings Fund.

[8] Although several judges dissented from the en banc Ninth Circuit's holding with respect to the MVRA in *Novak*, the dissenters distinguished federal tax levies from the MVRA. *See Novak*, 476 F.3d at 1076-77 (W. Fletcher, J., dissenting).

"ERISA pension plans are not exempted from payment of taxes under 26 U.S.C. § 6334, and thus they should not be exempted from payment of criminal fines"); *Hosking*, 567 F.3d at 335 (holding that a sentencing court "may order a lump-sum payment from [a retirement] account to satisfy a restitution order"). In addition, at least one federal court had held that TSP accounts were subject to MVRA orders. *See Laws*, 352 F. Supp. 2d at 712 & n.7. FRTIB, however, advised Congress and the Department of Justice that it nevertheless would not honor MVRA orders. *See* FRTIB Submission at 6-7; Letter for Kenneth E. Melson, Director, Executive Office for United States Attorneys, from Thomas K. Emswiler, General Counsel, Federal Retirement Thrift Investment Board (Apr. 30, 2009) (attachment 3 to FRTIB Submission); Email for Larry Novey from Thomas Trabucco (Apr. 21, 2009) ("Trabucco Email") (attachment 4 to FRTIB Submission). FRTIB also approved a motion to "seek clarification" from Congress as to whether the MVRA applied to TSP accounts, and in email correspondence FRTIB requested that a congressional committee revise FERSA "[i]f after review the Committee believes that the MVRA provision was intended to allow access to TSP funds." *See* Trabucco Email.

In light of FRTIB's request for clarifying legislation, Congress may not have intended to make any substantive change in the 2009 amendments, but simply to clarify congressional intent and provide FRTIB with comfort that MVRA orders may be satisfied from TSP accounts. Indeed, at the same time that it added the MVRA exception, Congress also added an express exception to the anti-alienation provision for forfeiture under the provision regarding government contributions enacted in 1996. *See* Thrift Savings Plan Enhancement Act of 2009, Pub. L. No. 111-31, § 108, 123 Stat. 1853, 1856 (2009) (codified at 5 U.S.C.A. § 8437(e)(3)). This change also seems to have been intended as a clarification, not a substantive amendment, as it seems unlikely that Congress intended the 1996 amendment to have been ineffective before the anti-alienation provision was thus amended to include an express cross-reference. *See* FRTIB Submission at 5-6, 12 n.13 (asserting that the addition of this exception to § 8437(e)(3) was "unnecessary" because forfeitable government contributions under § 8432(g) are "not protected by 5 U.S.C. § 8437"). To the extent the express exception for MVRA restitution orders was intended to be clarifying rather than substantive, this amendment may only reinforce the conclusion that Congress believed the closely similar language of the federal tax levy provision also creates an exception to the TSP provision. *Cf. Am. Fed'n of Gov't Employees*, 702 F.2d at 1186-87 (contrasting clarifying provisions and exceptions to otherwise governing law). In any event, the legislative history gives no clear explanation for the 2009 changes. Thus,

here, too, the amendment fails to indicate a "clear and manifest" intention, *Office of Hawaiian Affairs*, 129 S. Ct. at 1445 (internal quotation marks omitted), partially to repeal section 6334(c) and preclude federal tax levies on TSP accounts.[9]


/s/

DANIEL L. KOFFSKY
Deputy Assistant Attorney General

---

[9] The Tax Division also argues that tax levies under sections 6331 and 6334 do not fall within the scope of the TSP anti-alienation provision because that provision's ban on "execution, levy, attachment, garnishment, *or other legal process*," 5 U.S.C.A. § 8437(e)(2) (emphasis added), applies only to forms of "legal process," a term the Tax Division argues should be understood to "require judicial intervention," whereas tax levies under sections 6331 and 6334 are imposed administratively. *See* Memorandum for Daniel Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from John A. DiCicco, Acting Assistant Attorney General, Tax Division, *Re: Validity of IRS Tax Levies on Thrift Savings Fund Accounts* 8-9 (Dec. 18, 2009). We need not, and therefore do not, reach this argument to resolve the question presented to us.